4 So.3d 24 (2009)
J.L.D., Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-5696.
District Court of Appeal of Florida, Second District.
January 30, 2009.
Rehearing Denied March 18, 2009.
*25 James Marion Moorman, Public Defender, and Pamela H. Izakowitz, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Dawn Adams Tiffin, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
J.L.D. appeals a trial court order requiring him to pay restitution of $1480.30 following an adjudication of delinquency for grand theft of a motor vehicle. Although we conclude the trial judge departed at times from his proper role of neutrality, we conclude any error was harmless. We therefore affirm the order in all but one respect. We strike the award of $125 in restitution for the cost of towing the victim's vehicle because this award was not supported by competent, substantial evidence.
In June 2007, a police officer detained J.L.D. after observing him attempt to steal a minivan. The State filed a delinquency petition charging J.L.D. with grand theft of a motor vehicle. J.L.D. admitted to the charge and was adjudicated delinquent.
During a hearing on the issue of restitution, the victim testified that she sought to recover $100 she had paid as a deductible to her insurance company. After the State concluded its brief examination, the trial judge essentially took over the direct examination without inviting the defense attorney to conduct cross-examination. The judge suggested that the victim's damages should also include any consequential damages, such as lost wages. In response to the judge's questions, the victim testified that she had missed three or four shifts at work, but she could not offer an estimate as to the amount of wages she had lost. The defense attorney did not object to the trial judge's questions or the answers provided by the victim.
The State then presented testimony of a damage appraiser from the victim's insurance *26 company. During the appraiser's testimony, counsel for J.L.D. objected when it appeared that the appraiser was relying on a written estimate and had no recollection of the matter. In response, the trial judge asked the appraiser the questions needed to establish that he was using the document to refresh his recollection. Shortly thereafter, when defense counsel objected to the admission of the written estimate on grounds that no predicate had been laid for the admission of the document as a business record, the judge again took over questioning and asked the questions necessary to establish the admissibility of the document. Again, defense counsel did not object to questioning by the trial judge.
On appeal, J.L.D. first contends that the trial judge erred in departing from his role as neutral arbiter by questioning the victim as to her lost wages and in laying the predicate for the damage appraiser to refresh his recollection. J.L.D. argues that by posing questions to the State's witnesses in support of restitution, the trial judge assumed the role of a prosecutor.
"The requirement of judicial impartiality is at the core of our system of criminal justice." McFadden v. State, 732 So.2d 1180, 1184 (Fla. 4th DCA 1999). In serving as neutral arbiter in the proceedings, a trial judge "must not enter the fray by giving `tips' to either side." Evans v. State, 831 So.2d 808, 811 (Fla. 4th DCA 2002) (quoting Chastine v. Broome, 629 So.2d 293, 295 (Fla. 4th DCA 1993)). This duty of neutrality is especially important when the trial judge is in the presence of a jury, but this court has recognized that a trial court can commit error  even fundamental error  outside the presence of the jury by taking actions that obviously favor one side or the other. See Williams v. State, 901 So.2d 357, 359 n. 3 (Fla. 2d DCA 2005); see also Lyles v. State, 742 So.2d 842, 843 (Fla. 2d DCA 1999) (holding trial judge in a probation revocation hearing committed fundamental error where he "gave the appearance of partiality by taking sua sponte actions which benefitted the State").
There is an understandable temptation for a trial judge to take over questioning at a hearing such as a restitution hearing where an inexperienced attorney is slowing down a busy docket. At the same time, there is an understandable hesitancy on the part of counsel to object to proactive questioning by a trial judge who will be the decision-maker at the end of the hearing. A judge who wishes to "speed things up" in this context risks reversal for committing a fundamental error if the questions become openly adversarial or if the judge does not extend to opposing counsel an opportunity to object in a context that makes it clear that an objection will not engender the ire of the trial judge.
We agree that the trial judge in this case departed from a position of neutrality in attempting to elicit testimony in support of the restitution award. However, because the trial judge's conduct does not appear to have increased the award of restitution or to have otherwise harmed J.L.D., we conclude that the error does not rise to the level of fundamental error. See Chambers v. State, 975 So.2d 444, 451-52 (Fla. 2d DCA 2007) ("In order for an error to be fundamental, it must be harmful.") (citing Reed v. State, 837 So.2d 366, 369-71 (Fla.2002)). The restitution order imposed here awarded $100 to the victim based on the deductible she had paid to her insurance company. The order did not compensate the victim for her lost wages despite the trial judge's question. The order also awarded $1380.30 to the insurance company for the cost of repairing the victim's vehicle, but nothing in the record suggests that the State could not have established *27 the admissibility of this evidence if the trial judge had allowed the assistant state attorney to do her job. Thus, the trial judge's questioning of the two witnesses did not contribute to any portion of the restitution award.
J.L.D. further challenges the inclusion of towing costs in the restitution order. During the restitution hearing, the appraiser testified that the insurer had paid $125 to have the victim's van towed on two occasions. On cross-examination, the appraiser revealed that he obtained this figure through the insurer's computer system. The appraiser acknowledged that he lacked personal knowledge that the vehicle was towed or why it was towed. The victim had not testified that the car had been towed on even one occasion, and the damage caused by the attempted theft was not the type of damage that obviously would result in the vehicle's requiring a tow.
Defense counsel raised a hearsay objection to the appraiser's testimony regarding the amount of towing costs. That objection should have been sustained because the State produced no documentary evidence to support the cost of the towing services, and these amounts were not based on the knowledge of the witness. See Sanchez-Gutierrez v. State, 981 So.2d 632 (Fla. 2d DCA 2008). Indeed the State presented no evidence that the vehicle had been towed or reasonably needed to be towed. We therefore reverse that part of the restitution order awarding $125 for the towing of the victim's vehicle.
Affirmed in part, reversed in part, and remanded.
SILBERMAN and KELLY, JJ., Concur.